1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9   Steven Craig James,                    )   No. CV 00-1118-PHX-NVW
                                           )
10           Petitioner,                   )   <u>DEATH PENALTY CASE</u>
                                           )
11  vs.                                    )
                                           )   **ORDER RE: PROCEDURAL STATUS**
12                                         )   **OF CLAIMS**
    Dora B. Schriro et al.,                )
13                                         )
             Respondents.                  )
14                                         )
                                           )
15  _____

16        Petitioner Steven Craig James filed an Amended Petition for Writ of Habeas Corpus

17  alleging that he is imprisoned and sentenced to death in violation of the United States

18  Constitution; the Amended Petition raises 33 claims for relief.  (Dkt. 18.)[1]

19                              **<u>BACKGROUND</u>**

20        The following events, as set forth by the Arizona Supreme Court, resulted in

21  Petitioner's conviction for first degree murder and kidnapping.

22            In the early morning hours of November 17, 1981, the victim, Juan
          Maya, picked up a hitchhiker, Martin Norton.  Norton, a 14-year-old, lived
23        with a friend, Steven James, in a mobile home trailer located in Phoenix.
          Maya drove to the trailer and, according to Norton, made homosexual
24        advances.  Norton resisted and told Maya he should go in the trailer because
          there was a homosexual there who could satisfy Maya's desires.   Maya
25        entered the trailer, which was occupied at the time by James and Libberton.
          Norton told James that Maya was gay and to get rid of him. James then kicked
26        Maya in the crotch, and Maya left the trailer and ran.  James and Libberton
          pursued Maya and brought him back to the trailer.  Norton testified that
27

28  _____
            [1]        "Dkt." refers to the documents in this Court's file.

1    Maya's nose and mouth were bleeding when he was brought back to the trailer.

2          Once again in the trailer, Norton, James, and Libberton took turns hitting Maya in the face. Maya pleaded with them to take his car and credit cards and quit hitting him. James had a gun in his hand and took Maya's wallet. From the wallet, Libberton obtained the title to Maya's car, and forced Maya to sign the title over to Libberton. James took Maya's bracelet and ring. Libberton put on Maya's belt, which had Maya's name engraved on the back, and said, "[n]ow that I own Juan Maya's car I might as well be Juan Maya."

5          The three assailants then discussed, in Maya's presence, what to do with Maya. James said "[t]he only thing we can do is kill him." Libberton agreed. Next, James suggested the three could hide the body in a mine shaft on his parents' property in Salome. Libberton agreed, and at gunpoint forced Maya into Maya's car. Libberton kept the gun pointed at Maya all the way to Salome, approximately a two-hour drive from the trailer. On the way, James bought gas and cigarettes with one of Maya's credit cards. Later, along the highway to Salome, a police officer stopped the car for speeding. James, the driver, got out of the car and talked with the officer. Libberton threatened to shoot Maya if he said anything. James got back in the car and the group proceeded to Salome.

11          The group arrived at James' parents' property shortly before daybreak. Libberton handed the gun to James who ordered Maya to walk up the side of a small mountain to the mine shaft. Maya requested and was allowed to smoke a cigarette. The assailants stood by Maya, allowing him to finish his cigarette, before beginning the final assault. When Maya finished his cigarette, James ordered Maya to step to the shaft, a hole about five feet in diameter with a beam across the top. Maya screamed "[d]on't kill me." James fired at Maya twice from less than five feet. (Only sparks and no bullets came out of the gun because, as established at trial, the gun was filled with debris.) Maya ran at James, grabbed the gun, struggled with James, and fell to the ground. Libberton grabbed a five-pound rock and began beating Maya on the back of the head and shoulders with it. Maya was still struggling with James for the gun. Norton handed Libberton a board, with which Libberton struck Maya on the back, forcing Maya to let go of the gun. James then shot in the direction of Maya's head. As before, only sparks came out of the gun. Maya was still conscious, making "gurgling sounds," and moaning. Libberton grabbed the gun from James and fired it at Maya's head. Again, the gun malfunctioned. Maya was still not dead, so all three assailants picked up large rocks and slammed them on the back of Maya's head as Maya lay face down. After about five blows Maya lay unconscious. Libberton and James dragged Maya to the mine shaft and threw him in.

22          Back in the car Libberton and James told Norton that if he told anyone they would kill him. The three then returned to Phoenix. James told Norton to clean the trailer and remove Maya's blood from the couch. That morning Libberton and James picked up a David McIntosh in Maya's car. The three assailants and McIntosh drove around. Libberton bought some shoes with one of Maya's credit cards. At noon the three assailants were captured when Libberton attempted to get a cash advance of $20 on Maya's MasterCard.

See State v. James, 141 Ariz. 141, 144, 685 P.2d 1293, 1296 (1984) (incorporating the facts

from the opinion of James' co-defendant, Lawrence Libberton, State v. Libberton, 141 Ariz.

132, 135-36, 685 P.2d 1284, 1287-88 (1984)).   On direct appeal, the court rejected

1   Petitioner's claims and affirmed his convictions and death sentence. See James, 141 Ariz. at

2   149, 685 P.2d at 1301.

3        In November 1984, Petitioner filed his first petition for post-conviction relief ("PCR")

4   in the trial court. (Dkt. 27, Ex. B.)  Subsequently, counsel was appointed and filed a

5   supplement to the PCR petition. (Id., Ex. C.)  The PCR court summarily denied relief and

6   a motion for rehearing. (Id., Exs. D, E; ROA 511.)[2]  Petitioner submitted a petition for

7   review of the PCR court's ruling to the Arizona Supreme Court, which was summarily

8   denied. (Dkt 27, Ex. F.)

9        In 1986, Petitioner filed a petition for writ of habeas corpus in this District, Case No.

10   CIV 86-587-PHX-RGS.  On January 25, 1989, the Court dismissed the petition without

11   prejudice, to allow Petitioner to return to state court to exhaust certain claims.  Petitioner

12   filed a second PCR petition in state court in July 1990. (Dkt 27, Ex. G.)  In February 1991,

13   appointed counsel filed a supplemental PCR petition. (Id., Ex. H.)  The PCR court summarily

14   denied relief and a motion for rehearing. (Id., Exs. I, J; ROA 614.)  The Arizona Supreme

15   Court summarily denied a petition for review of the PCR court's ruling. (Dkt 27, Ex. K.)

16        In 1993, Petitioner returned to this Court and filed a new petition for writ of habeas

17   corpus, Case No. CIV 93-0869-PHX-RGS.  On January 27, 1994, the Court again dismissed

18   the petition without prejudice, to allow Petitioner to return to state court to exhaust certain

19   claims.  Petitioner filed a third PCR petition in state court in March 1995, which was denied

20   in May 1999. (Id., Exs. L, M.)  The Arizona Supreme Court summarily denied review. (Id.,

21   Exs. N, P.)

22        On June 29, 2000, Petitioner returned to this Court and filed a habeas petition. (Dkt.

23   1.)  After an amended petition was filed, Respondents filed an answer, limited by the Court's

24

25        [2]   "ROA" refers to seventeen volumes of records from trial and post-conviction

26   proceedings, which were prepared for Petitioner's petition for review to the Arizona Supreme

27   Court upon denial of his third PCR petition (Case No. CR-99-0474-PC).   "RT" refers to the

     reporter's transcripts of Petitioner's trial.  A certified copy of the state court record was

28   provided to this Court by the Arizona Supreme Court on December 27, 2000. (See Dkt. 12.)

1   order to issues of exhaustion and procedural default.  (Dkt. 26.)  Briefing concluded in

2   November 2001, after Petitioner filed a traverse, Respondents filed a reply, and Petitioner

3   filed a sur-reply.  (Dkts. 41, 43, 53, 56.)

4          While the procedural status of Petitioner's claims was under advisement, the Ninth

5   Circuit Court of Appeals issued a decision in <u>Smith v. Stewart</u>, 241 F.3d 1191 (9th Cir.

6   2001), that called into question Arizona's doctrine of procedural default.  Due to the practice

7   of bifurcating the briefing of procedural and merits issues then-employed by the District of

8   Arizona in capital habeas cases, the Court, in the interest of judicial economy, deferred ruling

9   on the procedural status of Petitioner's claims pending further review of <u>Smith</u>.  (Dkt. 31.)

10  In June 2002, the United States Supreme Court reversed the Ninth Circuit.  <u>Stewart v. Smith</u>,

11  536 U.S. 856 (2002) (per curiam).  Contemporaneously, the Supreme Court decided <u>Ring v.</u>

12  <u>Arizona</u>, 536 U.S. 584 (2002), which found Arizona's death penalty sentencing scheme

13  unconstitutional because judges, not juries, determined the existence of the aggravating

14  circumstances necessary to impose a death sentence.  The Court continued deferring ruling

15  in this matter pending a determination whether <u>Ring</u> applies retroactively to cases on

16  collateral review.  The U.S. Supreme Court resolved that <u>Ring</u> does not apply retroactively

17  in June 2004.  <u>Schriro v. Summerlin</u>, 542 U.S. 348 (2004).

18                  **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

19         Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

20  and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  <u>Lindh v. Murphy</u>,

21  521 U.S. 320, 336 (1997); <u>Woodford v. Garceau</u>, 538 U.S. 202, 210 (2003).  The AEDPA

22  requires that a writ of habeas corpus not be granted unless it appears that the petitioner has

23  exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); <u>see also</u> <u>Coleman v.</u>

24  <u>Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  To properly

25  exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest

26  court in a procedurally appropriate manner.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848

27  (1999).

28         A claim is "fairly presented" if the petitioner has described the operative facts and the

federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78 (1971).[3]  Commenting on the importance of fair presentation, the United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Following Duncan, the Ninth Circuit Court of Appeals has held that a state prisoner has not "fairly presented" (and thus exhausted) federal claims in state court unless he specifically indicated to that court that the claims were based on federal law.  See, e.g., Lyons v. Crawford, 232 F.3d 666, 669-70 (2000), as amended by 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").  A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," Gatlin v. Madding, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  Such explicit fair presentation must be made not only to the trial or post-conviction court, but to the state's highest court.  Baldwin v. Reese, 541 U.S. 27, 29 (2004).

---

[3]  Resolving whether a petitioner has fairly presented his claim to the state court is an intrinsically federal issue to be determined by the federal court.  Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995); Harris v. Champion, 15 F.3d 1538, 1556 (10th Cir. 1994).

If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. Vasquez v. Hillery, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. Coleman, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman, 501 U.S. at 735 n.1. This is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. See id. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him."); Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court. Rule 32.2 provides, in part:

> a. Preclusion. A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
>
> (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3) That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these sub-sections] is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner. If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2003) (emphasis added).  Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior petition for post-conviction relief.  Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(b), 32.4(a).

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32.  If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501 U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review.  Harris v. Reed, 489 U.S. 255, 262 (1989).  A state procedural default is not independent if, for example, it depends upon an antecedent federal constitutional ruling.  See Stewart v. Smith, 536 U.S. 856 (2002) (per curiam).  A state bar is not adequate unless it was firmly established and regularly followed at the time of application by the state court.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims.  Reed v. Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court.  Coleman, 501 U.S. at 750.

Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Id. at 753.  Objective factors which constitute cause include interference

1   by officials which makes compliance with the state's procedural rule impracticable, a

2   showing that the factual or legal basis for a claim was not reasonably available to counsel,

3   and constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488

4   (1986). "Prejudice" is actual harm resulting from the alleged constitutional error or violation.

5   Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice resulting

6   from a procedural default, a habeas petitioner bears the burden of showing not merely that

7   the errors at his trial constituted a possibility of prejudice, but that they worked to his actual

8   and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

9   United States v. Frady, 456 U.S. 152, 170 (1982).

10        If a petitioner cannot meet the cause and prejudice standard, the Court still may hear

11   the merits of procedurally defaulted claims if the failure to hear the claims would constitute

12   a "fundamental miscarriage of justice." Sawyer v. Whitley, 505 U.S. 333 (1992). The

13   "fundamental miscarriage of justice" exception is also known as the actual or procedural

14   innocence exception. There are two types of claims recognized under this exception: (1) that

15   a petitioner is "innocent of the death sentence," or, in other words, that the death sentence

16   was erroneously imposed; and (2) that a petitioner is innocent of the capital crime. In the

17   first instance, the petitioner must show by clear and convincing evidence that, but for a

18   constitutional error, no reasonable factfinder would have found the existence of any

19   aggravating circumstance or some other condition of eligibility for the death sentence under

20   the applicable state law. Id. at 336. In the second instance, the petitioner must show that "a

21   constitutional violation has probably resulted in the conviction of one who is actually

22   innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995). To establish the requisite probability,

23   the petitioner must show that "it is more likely than not that no reasonable juror would have

24   found petitioner guilty beyond a reasonable doubt." Id. Furthermore:

25       [A] substantial claim that constitutional error has caused the conviction of an
     innocent person is extremely rare. . . . To be credible, such a claim requires

26   petitioner to support his allegations of constitutional error with new reliable
     evidence—whether it be exculpatory scientific evidence, trustworthy

27   eyewitness accounts, or critical physical evidence—that was not presented at
     trial. Because such evidence is obviously unavailable in the vast majority of

28   cases, claims of actual innocence are rarely successful.

1   Id. at 324.

2                                 **DISCUSSION**

3          Of the 33 claims Petitioner presented, Respondents concede that Claims 1-3, 5, 8, 11,

4   16, 18, 21-25, 27 and 28 are exhausted.  To the extent Respondents concede exhaustion,

5   those claims will be reviewed on the merits.  Respondents assert that the balance of

6   Petitioner's claims are procedurally barred from further habeas review.  In his traverse and

7   surreply, Petitioner concedes that Claims 13, 14, 17 and 30 are procedurally barred.  (Dkt.

8   41 at 17; Dkt. 43 at 3; Dkt. 56 at 20.)  The Court addresses the procedural status of the

9   remaining claims in turn.

10         **Claim 4         Prosecutorial Misconduct by Vouching for the Testimony of
                              Martin Norton in Violation of the Fourteenth Amendment**
11
           Petitioner argues that he exhausted Claim 4 during his direct appeal.  (Dkt. 18 at 35.)
12
    Respondents contend that Petitioner did not fairly present this claim in state court because
13
    it was only presented as a state law claim, not a federal constitutional claim.  (Dkt. 26 at 12-
14
    13; 53 at 34-35.)  Petitioner replies that he fairly presented its federal constitutional basis in
15
    state court by citing federal cases in support of his claim.  (Dkt. 43 at 1-3.)
16
           On direct appeal, Petitioner claimed that the prosecutor improperly vouched for the
17
    credibility of a state's witness and that such conduct constitutes reversible error.  (Opening
18
    Br. at 25-29.)  In support, Petitioner cited federal cases, including United States v. Roberts,
19
    618 F.2d 530, 534 (9th Cir. 1980).  In Roberts, the Ninth Circuit engaged in federal
20
    constitutional analysis concerning whether defendant's federal due process right to a fair trial
21
    had been violated.  Specifically, the court stated that trial judges should be alert for
22
    prosecutor misconduct because such conduct has the "clear potential for affecting the
23
    defendant's right to a fair trial."  Id.  In this discussion, the court cited and discussed other
24
    federal cases in order to determine whether Petitioner received a fair trial or whether
25
    reversible error was committed.
26
           A claim is fairly presented if it presents a federal claim and cites federal case law
27
    engaging in federal constitutional analysis.  See Lyons v. Crawford, 232 F.3d 666, 670 (9th
28

1  Cir. 2000) (stating that in order to constitute fair presentation, petitioner must have either
2  referenced specific provisions of the federal constitution or statutes, or cited to federal case
3  law that engages in federal constitutional analysis of the claim); see also Dye v. Hofbauer,
4  126 S. Ct. 5, 7 (2005) (concluding that a claim was exhausted when it cited federal cases
5  which concerned alleged violations of federal due process rights in the context of
6  prosecutorial misconduct).

7       One form of prosecutorial misconduct occurs when a prosecutor vouches for the
8  credibility of a witness.  See United States v. Young, 470 U.S. 1, 18-19 (1985); Lawn v.
9  United States, 355 U.S. 339, 359-60 n. 15 (1958); United States v. Berger, 295 U.S. 78, 86-
10  88 (1935).  "Vouching consists of placing the prestige of the government behind a witness
11  through personal assurances of the witness's veracity, or suggesting that information not
12  presented to the jury supports the witness's testimony.  See Roberts, 618 F.2d at 533; see
13  generally State v. Hughes, 193 Ariz. 72, 79, 969 P.2d 1184, 1191 (1998) (citing Donnelly v.
14  DeChristoforo, 416 U.S. 637, 643 (1974), for the standard of prosecutorial misconduct and
15  further stating that, "Reversal on the basis of prosecutorial misconduct requires that the
16  conduct be so pronounced and persistent that it permeates the entire atmosphere of the
17  trial.").

18       Here, a fair reading of Petitioner's appellate brief demonstrates that the federal cases
19  he cited, including Roberts and Lawn, adequately presented his federal constitutional claim
20  of prosecutorial misconduct to the state court.  (Opening Br. at 25-29.)  Claim 4 will be
21  reviewed on the merits.

22  **Claim 6       State Knowingly Used the False Testimony of Daniel McIntosh to**
23                  **Secure Petitioner's Conviction and Death Sentence in Violation of**
                    **the Fourteenth Amendment**

24       Respondents contend that this claim was waived during Petitioner's first PCR
25  proceeding.  Even though the state court reached the merits of Claim 6 in the third PCR,
26  Respondents contend that such resolution did not vitiate the earlier waiver.  (Dkt. 26 at 13.)
27  The Court disagrees.

28       In his first PCR, Petitioner raised a generic claim that the state used perjured

testimony at his trial, and it was found precluded as waived pursuant to Ariz. R. Crim. P. 32.2(a)(3).  (Dkt. 27, Ex. B at 2; Ex. D at 1.)  During third PCR proceedings, Petitioner presented Claim 6 as a newly-discovered-evidence claim based on a 1993 deposition of Daniel McIntosh, which was obtained by his co-defendant Lawrence Libberton in concurrent collateral proceedings.  (Dkt. 27, Ex. L at 33-34.)  In a thorough disposition, the state court reached and resolved the merits of this claim.  (Id., Ex. M at 20-24.)  The PCR court did not conclude that Claim 6 was precluded as waived and then alternatively reach the merits.  (See id. at 24.)  Therefore, Claim 6 is exhausted, and it will be reviewed on the merits.

**Claim 7       Petitioner was Unlawfully Detained without Probable Cause in Violation of the Fourth and Fourteenth Amendments**

Petitioner claims that he was unconstitutionally detained after the murder and, therefore, questioning by police should have been suppressed and not used at trial. (Dkt. 27, Ex. G at 14-15.)  Respondents contend that Claim 7 is not cognizable under Stone v. Powell, 428 U.S. 465 (1976), because Petitioner had a full and fair opportunity to fairly litigate this Fourth Amendment claim in state court. (Dkt. 26 at 13-14.)

On habeas review, a federal court may not consider a claim that evidence obtained in violation of the Fourth Amendment should have been excluded at trial where the State has provided an opportunity for full and fair litigation of the Fourth Amendment claim in state court.  See Stone, 428 U.S. at 494; Hernandez v. City of Los Angeles, 624 F.2d 935, 937 n.3 (9th Cir 1980) (holding that a Fourth Amendment claim is not cognizable as a basis for federal habeas relief where the state courts have provided an opportunity for full and fair litigation of the claim).

Pre-trial, Petitioner moved to suppress the statements he made to police, arguing that they violated his rights under the Fifth and Sixth Amendments.  (ROA 86, 100, 103, 214.)  Petitioner did not attempt to litigate any Fourth Amendment challenge to his detention.  The trial court held a hearing to determine the voluntariness of Petitioner's statements.  (RT 8/27/82, 9/3/82.)  The officer who made the decision to detain Petitioner testified at the pre-trial hearing.  (See R.T. 8/27/82 at 27-35.)  Based on this record, the Court concludes that

Petitioner had a full and fair opportunity to litigate Claim 7; Petitioner concedes as much in his traverse. (See Dkt. 41 at 3-4.) Therefore, pursuant to Stone v. Powell, Claim 7 is denied as non-cognizable.

**Claim 9      Trial Court Unconstitutionally Limited Petitioner's Cross-Examination of Police Officers Regarding the Voluntariness of His Statements to Police in violation of the Sixth and Fourteenth Amendments**

Respondents contend that this claim is barred because the PCR court found it precluded as waived during the second PCR proceeding. (Dkt. 26 at 14.) Petitioner disagrees, arguing that the PCR court concluded that the claim could not be re-litigated, not that it was waived. (Dkt. 41 at 4.)

During the second PCR, the court concluded that Claim 9 had been waived because Petitioner could have raised it during his direct appeal. (Dkt. 27, Ex. I at 5-6.) Specifically, the court stated:

> The fact that . . . the voluntariness of his statements were issues addressed on their merit both before the trial, during and after trial and on appeal. The issue has been litigated and adjudicated in the proceedings leading to the judgment of conviction. The alleged denial of a right to cross-examination cannot be relitigated now. Any error has been waived by the petitioner. Rule 32.10 Arizona Rules of Criminal Procedure.

(Id. at 6.) In the context of the order, the court meant that Claim 9 could not be re-litigated because Petitioner already had an opportunity on direct appeal to raise it and did not do so. The trial court then concluded that Claim 9 had been waived, citing Ariz. R. Crim. P. 32.10.[4] Arizona's waiver rules, Rule 32.2(a)(3) and Rule 32.10, were adequate procedural bars at the time of Petitioner's procedural default of Claim 9; Arizona's procedural bar for waived claims is firmly established and regularly followed. See, e.g., Ortiz v. Stewart, 149 F.3d 923,

---

[4]      Ariz. R. Crim. P. 32.10 (1991) (repealed 1992), provided, in relevant part: Any grounds for post-conviction relief which have been litigated in the proceedings leading to the judgment of conviction shall not be re-litigated in these proceedings. All grounds for relief available to petitioner must be raised by petitioner either in his petition or in the hearing thereon. Any ground not raised will be presumed waived and may not be the basis for subsequent petition unless the court finds there was reasonable ground for omitting the matter in the original petition or hearing.

931-32 (9th Cir. 1998) (citing cases).   Because the procedural bar is adequate and independent, federal review of this claim is foreclosed unless Petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice ("FMJ").   Petitioner does not present any cause and prejudice or FMJ arguments; therefore, Claim 9 is procedurally barred.

**Claim 10    Ineffective Assistance of Counsel at Trial in violation of the Sixth**
**Claim 12    and Fourteenth Amendments**

**Claim 15    Ineffective Assistance of Counsel at Sentencing in violation of the**
**             Sixth and Fourteenth Amendments**

In Claims 10 and 12, Petitioner alleges that he received ineffective assistance of counsel ("IAC") at trial in the following instances:

10(A)   Counsel failed to consult with Petitioner sufficiently regarding possible defenses at trial, including usage of drugs at the time of the offense; Petitioner was prejudiced by the deficiency because counsel failed to establish an evidentiary basis for submitting lesser included offenses to the jury;

10(B)   Counsel failed to locate and interview witness to whom Norton attempted to sell victim's toolbox, said witness being told by Norton that he had to kill a man to get it;

10(C)   Counsel failed to locate and interview Dennis Watterson, Winnie Louise James, Eva Coldiron, Jim Stepp, Don Thorp and Rev. Richard Jackson, witnesses who would have testified that Petitioner did not have a history of violence and that he did have a problem with drug abuse;

10(D)   Counsel failed to locate and interview the police officer who stopped the victim's car en route to the murder scene, said officer would have verified that Petitioner, the driver, did not go to the back of the car during questioning, supporting his duress defense because allegedly co-defendant Lawrence Libberton had a gun pointed at him instead of the victim;

10(E)   Counsel failed to argue that when Petitioner was detained, he was put into a special jail cell for prisoners demonstrating signs of being mentally imbalanced and such failure prejudiced him because it would have helped demonstrate that he did not have a culpable mental state for the offense;

10(F)   Counsel's investigation of blood on the body of the victim was incomplete because counsel failed to verify that none of Petitioner's blood was found on the body of the victim;

10(G)   Counsel failed to use the prior statement of witness, Daniel McIntosh, to impeach him when he testified at trial;

12      Counsel denied Petitioner his right to testify at his trial about his drug use at the time of the crime and he suffered prejudice because such testimony would have shown that he did not have the culpable mental state for the crime.

In Claim 15, Petitioner alleges that he received IAC at sentencing in the following

instances:

> 15(A) Counsel failed to locate and interview Dennis Watterson, Winnie Louise James, Eva Coldiron, Jim Stepp, Don Thorp and Rev. Richard Jackson, witnesses who would have testified that Petitioner did not have a history of violence and that he did have a problem with drug abuse in support of mitigation at sentencing;

> 15(B) Counsel failed to argue that when Petitioner was detained, he was put into a special jail cell for prisoners demonstrating signs of being mentally imbalanced and such failure prejudiced him because it would have supported Petitioner's mitigation argument that he was under the influence of drugs at the time of the offense.

Petitioner fairly presented these IAC claims in his first PCR. (See Dkt. 27, Ex. C at 1-7.) The PCR court concluded that Petitioner had waived these claims because he could have presented them on direct appeal. (Id., Ex. D.) Petitioner contends that the procedural default rule cited by the court is not adequate to foreclose federal habeas review because such a rule was not firmly established and regularly followed at the time it was applied. The Court agrees.

For a state court's procedural bar to preclude federal review it must be adequate. To satisfy that requirement, the bar must have been firmly established and regularly followed at the time of the purported default. See Ford v. Georgia, 498 U.S. 411, 423-24 (1991); see also Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001) ("A procedural default rule is firmly established and regularly followed only if it is clear, consistently applied and well established at the time of petitioner's purported default.") At the time of Petitioner's alleged default, Arizona did not have a firmly established procedural rule precluding as waived IAC claims asserted in a PCR petition filed after the conclusion of the direct appeal. See State v. Nunez, 135 Ariz. 257, 660 P.2d 858 (1983) (following conclusion of direct appeal proceedings, petitioner filed IAC claim during first PCR proceeding and PCR court resolved the IAC claim on the merits); State v. Gunter, 132 Ariz. 64, 643 P.2d 1034 (1982) (same); State v. Ring, 131 Ariz. 374, 641 P.2d 862 (1982) (same); State v. Ramirez, 126 Ariz. 464, 616 P.2d 924 (1980) (same); State v. Carriger, 132 Ariz. 301, 645 P.2d 816 (App. 1982) (same); State v. Suarez, 23 Ariz. App. 45, 530 P.2d 402 (1975) (same); State v. Ybarra, 22 Ariz. App. 330, 527 P.2d 107 (1974) (same).

1    In <u>Lambright</u>, 241 F.3d at 1203-04, the Ninth Circuit, reviewing the same alleged

2    procedural default rule, held that no Arizona case at the time of Lambright's purported

3    default in 1984 required that he raise IAC claims on direct appeal.  Accordingly, the bar

4    applied by the PCR court to Claims 10, 12, and 15 is not adequate to bar federal habeas

5    review.  <u>See</u> <u>id.</u> (finding state default inadequate to bar consideration of an IAC claim raised

6    for the first time in a PCR petition rather than on direct appeal).  Because Petitioner fairly

7    presented Claims 10, 12, and 15 in his first PCR proceeding, and the state courts did not

8    apply an adequate procedural bar, the claims are properly before this Court for review on the

9    merits.

10   **Claim 19    Trial Court Erred in Considering Petitioner's Presentence Report
11   in Violation of the Sixth Amendment and Fourteenth Amendment
     Equal Protection Clause.**

12    Petitioner fairly presented Claim 19 in his second PCR petition. (<u>See</u> Dkt. 27, Ex. G

13   at 20.)  The PCR court found the claim precluded pursuant to Ariz. R. Crim. P. 32.2(a)(3).

14   In an alternative ruling, the court also found the claim meritless.  (<u>Id.</u>, Ex. I at 14-15.)

15   Petitioner contends that the merits ruling prevents the claim from being found defaulted in

16   these proceedings.  The Court disagrees.  (Dkt. 41 at 20.)

17    A state court's alternative ruling on the merits does not vitiate reliance upon a

18   procedural bar.  <u>See</u> <u>Harris v. Reed</u>, 489 U.S. at 264 & n.10 ("A state court need not fear

19   reaching the merits of a federal claim in an alternative holding. . . . [<u>Wainwright v.</u>] <u>Sykes</u>,

20   [433 U.S. 72 (1977)] curtails reconsideration of the federal issue as long as the state court

21   explicitly invokes a state procedural bar as a separate basis for decision."); <u>Carriger v. Lewis</u>,

22   971 F.2d 329, 333 (9th Cir. 1992) (en banc) (same).  The PCR court expressly found Claim

23   19 precluded as waived pursuant to Rule 32.2(a)(3); its clearly alternative ruling on the

24   merits was not intertwined with its primary reliance on an independent and adequate state

25   procedural bar.  Rule 32.2(a)(3) was an adequate procedural bar at the time of Petitioner's

26   procedural default of Claim 19; its bar is firmly established and regularly followed.  <u>See, e.g.</u>,

27   <u>Ortiz</u>, 149 F.3d at 931-32 (citing cases).  Petitioner does not present any cause and prejudice

28   or FMJ arguments; therefore, Claim 19 is procedurally barred.

1

2

**Claim 20      Trial Court Erred in Considering Victim Impact Information in Violation of the Eighth and Fourteenth Amendments**

Petitioner fairly presented Claim 20 in his third PCR petition.  (See Dkt. 27, Ex. L at

3

4

70-72.)  Unlike in Claim 9, the court did not unambiguously indicate that Claim 20 was

5

precluded as waived.  (See id., Ex. M at 35-38; ROA 736.)  Rather, after thoroughly

discussing the merits of Claim 20, the court stated:

6

7

8

Petitioner's claim that relief should be granted because of consideration of the recommendations of the victims on sentencing and victim impact evidence violated the eighth and fourteenth amendments is denied because the claim is factually and legally meritless and the court is precluded from granting relief on issues previously raised and decided.

9

10

(Id. at 37-38.)  Here, the court's language of preclusion did not specify that the issue was

11

waived for a previous failure to present.  See Ceja v. Stewart, 97 F.3d 1246, 1253 (9th Cir.

12

1996).  Rather, the court concluded that Claim 20 was previously raised and resolved on the

13

merits.  Nonetheless, Respondents contend that Petitioner failed to fairly present Claim 20

14

to the Arizona Supreme Court in his petition for review following the denial of PCR relief.

15

(Dkt. 53 at 27-32.) Specifically, Respondents contend that Petitioner violated Arizona rules

16

by incorporating claims for relief into the appendix of his petition for review, citing Ariz. R.

Crim. P. 32.9(c).  (Id.)

17

18

In Arizona, fair presentation requires that capital petitioners present their allegations

19

not only to the PCR court but also to the Arizona Supreme Court upon denial of relief.  See

20

O'Sullivan, 526 U.S. at 848; Swoopes v. Sublett, 196 F.3d 1008 (9th Cir. 1999) (per curiam)

21

(holding that capital petitioners must seek review in Arizona Supreme Court to exhaust

22

claims).  In Baldwin v. Reese, 541 U.S. 27 (2004), the Court held that "ordinarily a state

23

prisoner does not 'fairly present' a claim to a state court if that court must read beyond a

24

petition or brief (or a similar document) that does not alert it *to the presence of a federal*

25

*claim* in order to find material, such as the lower court opinion in the case, that does so."  Id.

26

at 32 (emphasis added).  Conversely, so long as a petitioner properly alerts the state court to

27

the presence of a federal claim in his petition, then the petitioner has fairly presented the

28

claim to the state court.

In his petition for review, as part of the introduction, Petitioner described Claim 20, and specified its federal constitutional basis.  (Dkt. 27, Ex. N at 3.)  Next, in his petition, he presented the claims for which he sought review, including Claim 20.  (Id. at 17.)  In order to provide a full discussion of Claim 20, Petitioner referred to arguments in his third PCR petition, which was included in the appendix to his petition for review.  (Id.)  The Court considers such steps to have been sufficient to fairly alert the Arizona Supreme Court to the federal nature of Claim 20.  It is exhausted and will be reviewed on the merits.

**Claim 26**    **Petitioner is Entitled to Resentencing Because the (F)(6) Aggravator Applied to him at Sentencing Was Subsequently Found to Violate the Eighth and Fourteenth Amendment as Facially Vague**

Respondents concede that Petitioner fairly presented Claim 26 in his third PCR petition and that the PCR Court resolved the claim on the merits.  (See Dkt. 27, Ex. L at 67-68; Ex. M at 29-32.)  However, Respondents argue that Petitioner did not fairly present Claim 26 to the Arizona Supreme Court in his petition for review.   (Dkt. 53 at 32.)  Regardless of exhaustion, the claim is meritless.

Even if it were true that the trial court unconstitutionally relied on a vague aggravating circumstance, appellate courts, and in this case the Arizona Supreme Court, have the authority to reweigh and impose the death penalty.  See Clemons v. Mississippi, 494 U.S. 738, 741 (1990) (holding that appellate courts have the authority to reweigh aggravating and mitigating factors after alleged trial error); see also Ring v. Arizona, 536 U.S. 584, 597 n.4 (2002) (stating that pursuant to Clemons, the Arizona Supreme Court has the authority to reweigh aggravating and mitigating circumstances after invalidating an aggravating circumstance) (further citation omitted); Richmond v. Lewis, 506 U.S. 40 (1992) (stating that the Arizona Supreme Court has the authority to reweigh aggravation and mitigation under Clemons).

By the time the Arizona Supreme Court resolved Petitioner's death penalty appeal, it had decided State v. Gretzler, 135 Ariz. 42, 659 P.2d 1 (1983), which set forth the factors for determining the existence of the especially cruel, heinous or depraved aggravating

circumstance under A.R.S. § 13-706(F)(6).  In <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990), the U.S. Supreme Court held that the Arizona Supreme Court in <u>Greztler</u> constitutionally narrowed the (F)(6) circumstance by digesting the factors that were to be utilized in determining its existence.

In this case, the Arizona Supreme Court, citing <u>Gretzler</u>, evaluated and determined that the evidence established the (F)(6) aggravating factor.  <u>See</u> <u>James</u>, 141 Ariz. at 146-48, 685 P.2d at 1298-1300 (citing <u>State v. Gretzler</u>, 135 Ariz. 42, 659 P.2d 1 (1983).  Thus, the <u>James</u> court independently reviewed and determined that the facts supported the existence of the aggravating circumstance, pursuant to a constitutionally narrowed construction of the especially cruel, heinous or depraved aggravating circumstance.  <u>James</u>, 141 Ariz. at 146-48, 685 P.2d at 1298-1300.  Thus, regardless of whether the trial court erred in its construction of Arizona's death penalty statute at sentencing, the Arizona Supreme Court properly construed the especially cruel, heinous or depraved aggravating circumstance in accordance with a constitutionally narrowed definition and validly weighed this circumstance against the mitigating circumstances.  Accordingly, Petitioner is not entitled to relief on this claim.

**Claim 29    Trial Court Erred in Failing to Consider as a Substantial Mitigating Circumstance the Relative Minor Punishment of Co-Defendant Norton Because It Was Norton Who Inflicted Fatal Blow to Victim**

Petitioner fairly presented Claim 29 in his second PCR petition.  (Dkt. 27, Ex. G at 22, Ex. H at 3-4.)  Regardless of whether Claim 29 was fairly presented, Respondents contend that it was procedurally defaulted in state court when the PCR court found it precluded as waived.  (Dkt. 26 at 20-21.)

In its ruling, the PCR court apparently reformulated the substance of Claim 29.  Instead of evaluating the trial court's consideration of mitigation evidence, the PCR court ruled that the Arizona Supreme Court "conducted a proportionality review and concluded that imposing the death penalty was not disproportionate. . . ."  (Dkt. 27, Ex. I at 17-18.)  Subsequently, the PCR court denied rehearing, discussing Claim 29 as follows: "It seems axiomatic that if this court states it is not in a position to tell the [Arizona] Supreme Court

they conducted an inappropriate proportionality review that waiver applies." (Id., Ex. J at 3.)

As fairly presented by Petitioner, the PCR court did not resolve Claim 29. In Smith v. Digmon, 434 U.S. 332 (1978) (per curiam), the petitioner fairly presented his constitutional claim to the state courts but the state courts did not resolve it. The Court held that the claim was exhausted despite the state court's failure to resolve the claim. Id. at 333-34. Similarly, in this case, the state court did not resolve Claim 29; it ruled on whether Petitioner received a constitutional proportionality review. Claim 29, as fairly presented, is exhausted and available for merits review.

**Claim 31      Imposition of the Death Penalty is Arbitrary and Capricious in Violation of the Eighth and Fourteenth Amendments**

**Claim 32      Arizona Discriminatorily Imposes the Death Penalty Against Impoverished Males whose Victims were Caucasians in Violation of the Eighth and Fourteenth Amendments**

Petitioner fairly presented Claims 31 and 32 in his second PCR petition. (See Dkt. 27, Ex. G at 9-12.) The PCR court concluded that Claims 31 and 32 were waived pursuant to Ariz. R. Crim. P. 32.2(a)(3). In an alternative ruling, the court also found the claims meritless. (Id., Ex. I at 11-12.) Petitioner contends that the court's merits ruling is necessarily intertwined with its waiver ruling. (Dkt. 41 at 30.)

The PCR court's alternative ruling on the merits does not vitiate the court's primary reliance upon a procedural bar. See Harris, 489 U.S. at 264 & n.10. The PCR court expressly found Claims 31 and 32 precluded as waived pursuant to Rule 32.2(a)(3); its alternative ruling on the merits is not intertwined with its reliance on a procedural bar. Thus, Claims 31 and 32 are procedurally defaulted.

As cause to overcome the default, Petitioner relies on IAC of direct appeal counsel. (Dkt. 41 at 30.) Before ineffective assistance of appellate counsel may be utilized as cause to overcome a procedural default, the particular ineffective assistance allegation must first be submitted and exhausted before the state courts as an independent claim. See Murray v. Carrier, 477 U.S. 478, 489-90 (1986); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir.

1988).  Petitioner did not present in state court any independent appellate IAC claims for the failure to raise Claims 31 and 32 on direct appeal.  Therefore, such allegations cannot constitute cause.  Because Petitioner has failed to establish cause for the default, there is no need for the Court to reach the issue of prejudice.  Thomas, 945 F.2d at 1123 n.10.  Claims 31 and 32 are procedurally barred.

**Claim 33      Death by Lethal Gas is Unconstitutional in Violation of the Eighth and Fourteenth Amendments.**

Petitioner challenges the constitutionality of execution by lethal gas.  (Dkt. 18 at 44.) Regardless of whether Petitioner's constitutional challenge to execution by lethal gas was fairly presented and exhausted in state court, it is without merit.  See 28 U.S.C. § 2254(b)(2). The PCR court held that death by lethal gas is not cruel and unusual and that Petitioner could choose lethal injection instead.  (Dkt 27, Ex. M at 29.)  Pursuant to the AEDPA, Petitioner is not entitled to relief on any claim adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To assess a habeas claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review.  "Clearly established" federal law is defined as the holdings of the Supreme Court at the time the petitioner's state court conviction became final.  See Williams v. Taylor, 529 U.S. 362, 365 (2000).  Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue.  See id. at 381.

Because the Supreme Court has never held that execution by lethal gas is unconstitutional, see, e.g., Gomez v. Fierro, 519 U.S. 918 (1996), there is no clearly established constitutional principle and habeas relief cannot be granted.  Moreover, Arizona's default execution procedure is lethal injection, and Petitioner would have to choose lethal gas

in order for that to be his execution procedure.  In <u>Stewart v. LaGrand (Walter)</u>, 526 U.S. 115, 119 (1999), the Supreme Court determined that if a prisoner chooses execution by lethal gas over the default execution procedure, lethal injection, he waives any objection he might have to execution by lethal gas.  Therefore, Claim 33 will be dismissed as meritless.

Based on the foregoing,

**IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: (a) Claims 9, 13, 14, 17, 19, and 30-32 based on a procedural bar; (b) Claims 26 and 33 on the merits as a matter of law; and (c) Claim 7 as not cognizable.

**IT IS FURTHER ORDERED** that, no later than **sixty (60) days** following entry of this Order, Petitioner shall file a Memorandum regarding the merits *only* of Claims 1-6, 8, 10-12, 15, 16, 18, 20-25, and 27-29.  The Merits Memorandum shall specifically identify and apply appropriate AEDPA standards of review *to each claim for relief* and shall not simply restate facts and argument contained in the amended petition.  Petitioner shall also identify in the Merits Memorandum:  (1) each claim for which further evidentiary development is sought; (2) the facts or evidence sought to be discovered, expanded or presented at an evidentiary hearing; (3) why such facts were not developed in state court; and (4) why the failure to develop the claim in state court was not the result of lack of diligence, in accordance with the Supreme Court's decision in <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**IT IS FURTHER ORDERED** that no later than **forty-five (45) days** following the filing of Petitioner's Memorandum, Respondents shall file a Response Re: Merits.

**IT IS FURTHER ORDERED** that no later than **twenty (20) days** following the filing of Respondents' Response, Petitioner may file a Reply.

**IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or Respondents file a Motion for Reconsideration of this Order, such motion shall be filed within **fifteen (15) days** of the filing of this Order.  The filing and disposition of such motion shall not toll the time for the filing of the merits briefs scheduled under this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall, pursuant to Fed. R. Civ. P. 25(d), substitute, as a Respondent, Dora B. Schriro for Terry Stewart as Director of

1    the Arizona Department of Corrections.  The Clerk shall update the title of this case to reflect

2    this substitution.

3            **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this

4    Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, Arizona

5    85007-3329.

6            DATED this 24th day of July 2006.

7

8    _____

                    Neil V. Wake

9                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28