**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Steven Craig James, | ) | |
| Petitioner, | ) | |
| v. | ) | No. CIV 00-1118 PHX-NVW |
| Dora B. Schriro, et al., | ) | <u>DEATH PENALTY CASE</u> |
| Respondents. | ) | **ORDER** |

Pending before the Court is Petitioner's Motion to Alter or Amend Judgment filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure based on newly discovered evidence.[1]  (Dkt. 160.)  Also pending before the Court is Petitioner's "Application for Authorization for Travel Funds and Re-Appointment of Investigator."  (Dkt. 161.)

**DISCUSSION**

<u>1. Rule 59(e) Motion</u>

Previously, this Court denied Petitioner's amended petition requesting habeas relief. (Dkts. 158, 159.)  Petitioner asks the Court to reconsider its entry of judgment in this matter based on newly discovered evidence relating to his claim that counsel was ineffective at sentencing (Claim 15).  (Dkt. 160 at 1, 8.)  Petitioner seeks expansion of the record to include declarations from five "lay witnesses," including: (1) Petitioner's biological mother, Lora Pannell, (2) Petitioner's biological sister, Donna Herzog; (3) Tacla Machesny, described as

---

[1]     In the alternative, Petitioner moves for a new trial pursuant to Rule 59(a).  (Dkt. 160 at 1.)

"instrumental" in the adoptions of Petitioner and his sister; (4) Thomas G. Smith, an acquaintance of Petitioner's father, Lester Pannell; and (5) Thomas Blackman, a "faith-based substance abuse counselor" who was married to Lester Pannell's former wife, Geraldine, from 1975 until her death in 2006 and who "interacted" with Lester frequently during the last years of Lester's life.  (*See id.* at 3-8;  *See also* Dkt. 160-2, Exs. 84-88.)

Petitioner contends that Lora Pannell's declaration provides "significant information" relating to the conditions and circumstances in which he lived prior to his adoption by Bradley and Winnie James.  (*See* Dkt. 160 at 3-4; Ex. 84.)  Donna Herzog's declaration "sheds light on the manner in which the children were treated in Petitioner's home of origin." (*Id.* at  4-5; Ex. 85.)  Tacla Machesney's declaration "provides information on Lora  Pannell's neglect of her children, the circumstances of Petitioner's adoption, and the inadequacy of Winnie and Bradley James to raise a child who had experienced a traumatic early life." (*Id.* at 5-6, Ex. 86.) Thomas Smith's declaration "adds valuable information relating to Petitioner's father and the conditions in Petitioner's early childhood home." *(Id.* at 6-7, Ex. 87).  Thomas Blackman's declaration describes how he met Petitioner's father, Lester Pannell, in 1974,  and as a result of his acquaintance with Lester, and his marriage to one of Lester's ex-wives, Geraldine, he learned "substantial information relating to [Lester], both from his own observations and from Geraldine's recollections."  (*Id.* at 7-8; Ex. 88.)

*Law Generally*

A motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure is in essence a motion for reconsideration.  Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  The Ninth Circuit has consistently held that a motion brought pursuant to Rule 59(e) should only be granted in "highly unusual circumstances." *Id.*; *see 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  Reconsideration is appropriate only if the court is presented with newly

-2-

discovered evidence, if there is an intervening change in controlling law, or if the court committed clear error.[2]  *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam); *see School Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A motion for reconsideration is not a forum for the moving party to make new arguments not raised in its original briefs.  *Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).  Nor is it the time to ask the court to "rethink what it has already thought through."  *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz. 1998).

To obtain relief pursuant to either Rule 59(a) or (e) based on newly discovered evidence, Petitioner must show (1) that the evidence existed at the time the court entered its judgment, (2) it was not discoverable sooner in the exercise of due diligence, and (3) the evidence is of such magnitude that had it been produced earlier it would  likely have changed the outcome.  *See Coastal Transfer Co. v. Toyota Motor Sales*, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987) (motion for new trial); *see also Duarte v. Bardales*, 526 F.3d 563, 573 (9th Cir. 2008) (Bea, J., dissenting) (motion to alter or amend the judgment).

*Analysis*

Petitioner's counsel alleges he exercised due diligence in obtaining the five witness statements now attached in support of the Rule 59 motion.  With respect to Lora Pannell, Petitioner's biological mother, counsel states he attempted to locate her via internet searches but to no avail.  Family members told him that she lived in Palmdale, California, near a local high school.  Counsel traveled there but could not find her, although he knocked on several apartment doors near the high school.  In June, 2008, a "family member" gave counsel her address and phone number and counsel then interviewed her.  (Dkt. 160 at 4.)

Regarding Petitioner's biological sister, Donna Herzog, counsel states simply that he

---

[2]      Rule 59(a) permits the Court to grant a new trial "for any of the reasons for which new trials have heretofore been granted . . . in the courts of the United States."

"attempted" to find her before filing the Merits Brief but was unsuccessful because she was homeless. She currently lives with her daughter and counsel was able to interview her in June. With respect to Tacla Machesney, counsel asserts he did not learn of her identity until his interview with Donna Herzog in June, 2008. (*Id*. at 6.)

Regarding Thomas G. Smith, counsel states he could not locate him prior to filing the Merits Brief because "[a] person familiar with Petitioner's family misinformed counsel in 2007 that all of Lester Pannell's associates from the 1950s and 1960s were deceased." (Dkt. 160 at 7.) In May, 2008, counsel learned that Smith was alive and living in Washington state and interviewed him. With respect to Thomas Blackman, counsel states only that he "did not become aware of Mr. Blackman's existence until May 2008." (*Id.* at 8.)

The Court has concerns about counsel's diligence in obtaining information from these witnesses. The Court notes that two of the witnesses are Petitioner's biological mother and sister. Petitioner was able to locate and visit his mother in 1981. Petitioner grew up next door to his sister, and had frequent contact with her through the years. (*See* Dkt. 160 at Ex. 85.) Counsel must have been aware of these individuals from the inception of the case and, during the eight years of its pendency, had ample time to locate them. The description of how counsel did locate them does not seem particularly remarkable and the Court is not convinced that counsel could not have located them sooner in the exercise of due diligence. For instance, counsel states he located Lora Pannell after obtaining her address and phone number from "a family member" but does not explain why this information could not have been obtained sooner from either that same family member or another family member. Counsel states that Donna Herzog was previously homeless and that he interviewed her after she went to live with her daughter. He does not explain how he knew she was homeless, for what length of time she was homeless, or what steps he took to locate her.

With respect to the three other witnesses, the Court has questions about counsel's diligence in locating them as well. At least one of the witnesses, Tacla Machesney, was made

-4-

known to counsel through an interview with Donna Herzog. (Dkt. 160 at 6.) Had counsel located Herzog sooner, information concerning Machesney would also have been discovered sooner as well. In addition, Petitioner new Machesney while he was growing up and lived next door to her parents, who were Donna's adoptive parents. (*See* Dkt. 161, Ex. 86 at paras. 1, 13 and 14.) Regarding Thomas Smith and Thomas Blackman, again, counsel provides little detail as to why they could not have been located sooner. Counsel states simply that he was given bad information in regard to Smith. Counsel provides no explanation for the failure to locate Blackman sooner.

Petitioner has the burden of establishing due diligence in obtaining "newly discovered" evidence. *See Coastal Transfer Co.*, 833 F.2d at 211. In light of the eight years counsel had to develop this case, the numerous extensions of time granted, and in light of the fact that nearly two years ago Petitioner was allowed a court-funded investigator to assist in this matter, (*see* Dkt. 95), the Court questions whether counsel was diligent in obtaining information from these witnesses.

In its order denying IAC at sentencing based on counsel's failure to investigate and present important mitigation relating to Petitioner's background and family history, the Court concluded that nothing offered by Petitioner in support of his habeas petition was of such a nature as to create a reasonably probability that if it had been presented to the sentencing court Petitioner would not have been sentenced to death. (*See* Dkt. 158 at 60-63.) Irregardless of any question of due diligence, the Court does not believe the "new" evidence presented in these witness declarations changes that assessment.

For instance, Lora Pannell describes her turbulent relationship with Petitioner's father, Lester, including his drug use and his violent and abusive conduct toward her. She does not allege Lester was violent toward Petitioner and she indicates Lester was out of the home by the time Petitioner was three years old. Although no great detail on Petitioner's pre-adoption childhood was provided in the Pre-Sentence Report, the report described the circumstances

-5-

1    prior to his adoption as "disruptive and unstable," that Petitioner's natural father was a drug

2    addict who was sent to prison while Petitioner was very young, that his mother gave him up

3    for adoption at the age of three because she was incapable of caring for him, and that he spent

4    the next year and a half in foster care until he was adopted by the James's. (*See* Dkt. 110, Ex.

5    28 at 8, 10.)  The new information in Pannell's declaration is not of such a magnitude as to

6    cause the Court to reconsider its denial of relief.  *See Jones v. Aero/Chem Corp.*, 921 F.2d 875,

7    878 (9th Cir. 1990) (denying Rule 59 motion where new evidence would not likely have

8    changed the outcome had it been presented at trial); *see also Trinity County v. Andrus*, 77

9    F.R.D. 29, 31 (E.D. Cal. 1977) (denying Rule 59 relief where new evidence was essentially

10   cumulative in nature and goes only to the weight and credibility of existing evidence).

11        In regard to the declarations of Donna Herzog, Thomas Smith and Thomas Blackman,

12   little new information of significance about Petitioner's early childhood is provided.  In fact,

13   much of the information provided by these individuals relates to people other than Petitioner,

14   for instance Petitioner's father, with whom he had no contact after the age of three.  Similarly,

15   nothing in the information provided by Tacla Machesney in her declaration rises to a level

16   which would cause the Court to reconsider its decision to deny habeas relief.

17        In sum, none of the new declarations, either singly or in combination, change the Court's

18   original conclusion that additional evidence concerning Petitioner's early childhood or family

19   background would not have created a reasonable probability of a sentence less than death,

20   particularly in light of the aggravating circumstances surrounding Juan Maya's murder and the

21   overwhelming evidence of  Petitioner's central role in it.  The Court also notes that any

22   evidence of difficult conditions in Petitioner's life prior to age three is tempered by his own

23   statements

24   that he has no memory of this period in his life,[3] and that after he was adopted by the James's

25

26        [3]     Petitioner points to a passage in Lora Pannell's declaration as evidence she

27   physically abused him and attempted to kill him.  (*See* Dkt. 160 at 3-4.)  Review of her actual

28                                               -6-

at age four, he was provided a "good, stable middle class home in which he always felt loved and protected." (Dkt. 110, Ex. 28 at 8.)  As noted in its order denying relief, the fact that Petitioner was out of his biological parents care by age three and adopted into a loving home by age four is evidence of his good fortune. (*See* Dkt. 158 at 61.)

For all these reasons, the Court declines to rethink what it has already thought through. *See Rezzonico*, 32 F.Supp.2d at 1116.  Petitioner's Motion to Alter or Amend the Judgment, or alternatively, Motion for a New Trial, will be denied.  In addition, Petitioner's request for reconsideration of its order denying further evidentiary development will also be denied.

2. Application for Authorization for Travel Funds and Re-Appointment of Investigator

Petitioner also requests that the Court authorize funding for counsel to conduct additional discovery.  Specifically, he requests prospective funding authorization for counsel to travel to Grand Rapids, Michigan to interview Norman O'Steen, Petitioner's biological uncle (his mother's brother).  He contends that O'Steen has admitted molesting other children, that O'Steen was a "frequent" visitor to his parent's home while Petitioner stilled lived in that home, and he desires to have counsel interview O'Steen to discover if he may have molested Petitioner during that time as well.  (*See* Dkt. 161 at 1-2.)  Petitioner also requests that the Court re-appoint investigator R. Bruce Whitman, for the limited purpose of accompanying counsel to Grand Rapids to assist in interviewing O'Steen.[4]

Under Rule 6, Rules Governing § 2254 Habeas Cases, Petitioner must show "good cause" for his discovery request.  In addition, 18 U.S.C. § 3599(f) permits funding for

_____

declaration reveals this to be an exaggeration.  In her declaration, Pannell states that Petitioner's constant "screaming" made her "want" to kill him and that once when he was screaming she placed a pillow over his face but "stopped myself when I realized what I was doing." (*See id.*, Ex. 84 at para. 14.)  Again, Petitioner has no memory of this incident and to characterize this as a serious attempt by Pannell to kill her son is a bit of a stretch.

[4]    The Court previously appointed Whitman, pursuant to 21 U.S.C. § 848(q)(9), at the rate of $55.00 per hour, to serve as an investigator to assist counsel "in preparation for briefing the merits of several ineffective assistance of counsel claims . . ." (Dkt. 95.)

-7-

investigative services where "reasonably necessary" for his representation.

Upon review, the Court concludes that Petitioner cannot establish either "good cause" for the discovery he seeks or that it is "reasonably necessary" for his representation. Judgment in this matter has been entered and the case is closed. At this stage in the proceedings, any newly discovered evidence attacking the Court's adjudication of his IAC at sentencing claim could only be considered by the Court via a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The Court is not convinced it would be proper for it to consider such a motion under the AEDPA.[5]  *See Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005) (holding that a Rule 60(b) motion seeking leave to present "newly discovered evidence" in support of "a claim previously denied . . . is in substance a successive habeas petition and should be treated accordingly."); *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) (where a habeas petitioner "seeks discovery that might provide new evidence that he could present in support of claims previously denied . . . . [t]he Rule 60(b) . . . is in effect a second or successive habeas petition that seeks to present claims that have already been adjudicated in a previous petition.")

For these reasons, Petitioner cannot establish "good cause" for further discovery, post-judgment, and his request for additional funds to conduct such discovery will be denied.

**IT IS HEREBY ORDERED** that Petitioner's Motion to Alter or Amend the Judgment, or in the alternative, Motion for a New Trial (Dkt. 160) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Application for Authorization for Travel Funds and Re-Appointment of Investigator (Dkt. 161) is **DENIED**.

DATED this 12th day of August, 2008.

_____
Neil V. Wake
United States District Judge

---

[5]   28 U.S.C. § 2244(b)(1) provides that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."